Nash, C. J.
 

 This action is- brought, to recover the penalty of five dollars, imposed by the City authorities, for a violation of an ordinance made by them. The fact of the violation of the ordinance is not denied,
 

 The first objection made by the defendant’s Counsel, is an alleged variance between the ordinance, under which the action is brought, and the act of incorporation. A copy frota the 3rd Section of that act accompanied the .case. The language is “ that the Commissioners .and their successors in office &c., are hereby incorporated into a body politic” &c. The ordinance is,
 
 M
 
 at a meeting -of the Intendant and Commissioners” &,e. The objection is, that the Intendant is not a Commissioner, and, therefore, -the ordinance is void, as not being passed by the proper authority. The cases-cited by the Counsel at the Bar fully sustain his position. The Commissioners act under a specialdelegation of authority and their powers must be exercised in strict -conformity thereto, and if not so done, their act is void. Rex v. Broke, Cowp. 26.. If the Intendant, therefore, had no right, under the act of incorporation, to set with the Commissioners, and act with them, the ordinance is void, because it is not passed by the body,' to whom the .power is given. Several private acts have been passed by -the Legislature, at different times, concerning the City of Raleigh. By the first Section of the act of ,1803, Private Acts, Page 13, it
 
 *53
 
 is provided, “ That the government of the City of Raleigh, shall be vested in an Intendant and seven Commissioners” &c.’ This aet defines the duties of the Intendánt, but assigns him no place among the Commissioners. The omission is supplied by the subsequent act of 1813, Private Acts of 1813, Page 24. By the 4th Section of that act, it is provided,
 
 “
 
 That the Intendant of Police shall have- a seat in the Board of Commissioners, and when present, shall preside therein;
 
 in Ms absence,
 
 the Board shall appoint a chairman pro
 
 tempore.”
 
 By this act then, the Intendant is constituted one of the Commissioners. _ What caused this difference between the two acts, with respect to the Intendant, we are not informed, but we presume it was induced, by the-propriety of giving the Board a permanent head. Whatever it may have been, the latter act clearly makes the In-tendant a member of the Board of Commissioners. This objection on the part of the defendant cannot be sustained.
 

 It is further objected, that the act of the defendant, in selling his oats without having them first weighed, by the weigh-master, at the market balance, was not -within the Equity of the ordinance:
 

 By an equitable construction, a case not within the letter of an act is sometimes holden to be within its meaning, and sometimes the letter is restrained by an equitable construction. It is
 
 tMs
 
 Equity of which the defendant seeks to avail himself, for it is not denied, that he is within the letter of the ordinance.
 

 BacoN, in the 6th vol. ef his Abridgement, Title’s Statute,' Page 386, gives a good rule by which the Equity of a Statute may be ascertained. It is, “to suppose the lawmaker present, and that you have asked him this question: Did you intend to comprehend this case ? Theny you must yourself give such answer, as you imagine he, being an upright and reasonable man, would give.”
 

 Taking this to be a sound rule, we need not in this case, go through the mental process recommended ' '
 
 *54
 
 ion that the act complained of is within the letter and spirit of the ordinance. Bacon further states, Page 389, of the same Yolume, that a Statute which concerns the public good, ought to be construed liberally.
 

 The ordinance we are considering, is made for the good of the community, within which it has its operation.
 

 The words embrace the act with which the defendant is charged, and unless it be unconstitutional, ought to be enforced.
 

 This brings us to the third and last reason assigned by the defendant’s counsel, why the judgment below should be reversed. It is contended, that the act is unconstitutional, because it is against common right, and in restraint of trade.
 

 Justice BlacKSTone, in treating of rights, after bringing into one view the great charters wrested, at different tidies, from the sovereign on the throne, observes, that the rights secured by them, may be said to be, “ in a peculiar and emphatic manner, the rights of the people of England,” 1st vol. 1£9 ; and these, he says, may be reduced to three principal or primary articles: The right of personal security; the rig-’t of personal liberty; and the right of private property. These constitute what are called
 
 common rights,
 
 because they are common to all, and secured to all by the constitution. We do not perceive that this ordinance violates any of these rights. If it does, then the whole system of inspection lasvs of flour and tobacco, lumber and other articles, established by our Legislature, is in violation of them, and void. For, the Legislature-can no more disregard, in its enactment, what the constitution forbids, than a corporation, its creature, can. The inspection laws require, that the articles to be inspected shall bo carried to a particular place, and examined, and measured, and weighed.
 

 Is the ordinance in restraint of trade ? We think not. If so, and unsupported by any custom, it is void. Angel
 
 k
 
 Ames, 332. There is, howevor, a material difference between
 
 *55
 
 acts in restraint of trade, and those for tbe regulation of trade; tbe latter are proper and often necessary. It is said, that it operates in restraint of trade, because it deprives tbe citizens at large of a privilege which they enjoyed before its passage, that of selling the produce of their farms in Raleigh, when and where they pleased; that it was a tax to be paid to the,weigh-master, either by the producer or the consumer. The act of incorporation gives to the" Commissioners power to make “such rules, orders, 'regulations, and “ ordinances, as to them shall seem necessary, &c., for regulating the public market, by appointing a .clerk,
 
 or other-
 
 “ wise, and also to make such other rules and ordinances, as “ to them shall seem meet for the improvement and good “ government of said city.” The.public market here meant, is the city of Raleigh, and is not confined. to any one particular spot within it, and to regulate it, is to establish rules by which those who bring produce, or other articles, to sell therein, shall be governed. If it was deemed proper, by the Commissioners, that all articles enumerated in the ordinance, set forth in this case, should, before being sold, be carried to the public scales, and their weight there ascertained, they had authority to do so. It abridged the defendant of no right which he had previously enjoyed; because, if he sold his oats by weight, as he did, he would have had to have them weighed, and it was a convenience to him to have them weighed in bulk, and, after being weighed, he might sell them in any part of the market, or to whomsoever might be disposed to buy. These views are sustained by the case of NIGHTINGALE, Pet. -11. Pick. 108.
 

 By an ordinance of the city authorities, it was ordained, “ that the limits of Fanueil Hall Market, shall be the lower “ floor of the building, &c., and the street on each side “ thereof called North Market street and South Market “ streetand, by a subsequent section, it is provided, “that “ no inhabitant of the city of Boston, or of any town in the
 
 *56
 
 “ vicinity thereof, not offering, &c., shall, at any season of the' “ year, without the permission of the clerk of Eanueil Hall'
 
 “
 
 market, be suffered to occupy any stand, &c.¡, for the púr- “ pose of vending' commodities in- either of the streets meiiJ “ tioned in the first section of this ordinance,” &c. The petitioner violated the ordinance.- The Cóurt decided, that the ordinance was within the power of the Cofiimissionérs; that it did not violate any private rights, nor does it operate
 
 “
 
 as an improper restraint of trade, but is a wholesome regulation of it.” The case of Stokes & Gilbert v. Corporation of New York, 14th Wendell, 87, is still more' in point, deciding, substantially, all the objections raised here,. The authorities passed an ordinance, imposing a penalty of five dollars upon any person who should- sell any anthracite coal,'within the city, without being first weighed by the weigh-masters. The petitioner violated the ordinance. The objections raised by the petitioner’s counsel embrace this case. The first was, that the Commissioners had no power,, under their charter, or under the Constitution, to pass the by-law in question. The Court rifled, that the case was-clearly within the power of corporate regulation. These' cases abundantly show, that the ordinance in question is con--stitutional, and that it is a corporate regulation.- If this were not so, there is not a municipal corporation in the' State, whose ordinances, regulating the mode and manner' in which the traffic of a town shall be conducted, are not' void.'
 

 It is said, further, that the commission to be paid to the weigh-master is a tax. Fees; such as are allowed by the ordinance in this case, are not a tax. In authorising the commissioners to pass such by-laws for the government of the city, as they might think necessary, it authorised the ordinance by which the office^ of weigh-master was created, and also authorised the payment of a salary, leaving to the Commissioners the power to say how much he should receive
 
 *57
 
 and bave. If the traffic is within the city, the buyers, inmost cases, will be citizens and' voters, and,- if the ordinance •is oppressive, they have the remedy in their own hands.-
 

 Judgment affirmed-