STATE v. F. M. SHARP.

(Decided November 7, 1899.)

*Working Public Roads—Road Hands—Notice—Warrant of
Justice—Motion in Arrest of Judgment—Road Act
(1899), Chap. 581, Secs. 4 and 24.*

1. Under the Road Act of 1899, chap. 581, it is competent for the
overseer to testify that he left a written notice with a road
hand specifying time and place for working the road, without producing the same.

2. Working the public roads is not a tax, but a duty imposed and
regulated by law, like service upon juries, military service,
etc., which may be required to be rendered to the State without compensation, and the neglect of this duty may be remedied by indictment.

3. Legislation in regard to public roads need not be uniform
throughout the State, but may be adapted to the wants and
wishes of various localities, being an exercise of the police
power, similar to acts relating to local liquor prohibition, to
local prohibition as to cattle running at large, to local differences in methods of election of Town and County Commissioners, to local provisions as to public schools, dispensaries, etc.

4. The Road Act, sec. 24, dividing the county of Durham into two
road districts, is unobjectionable, and is an arrangement
heretofore held valid.

5. Where the affidavit upon which the warrant is based sets out
the charge in full, and the Justice appends his warrant referring thereto, this incorporates the charge, and makes it
part of the warrant, and if taken together they constitute a
charge of a criminal offense, a motion in arrest of judgment
for insufficiency of the warrant will not be entertained.

INDICTMENT for failure to work the public road, tried on
appeal from Justice's Court, before *Brown, J.,* at September Term, 1899, of DURHAM Superior Court. The defend-

ant was convicted.    Motion for new trial.    Motion overruled.
Defendant excepted.    Motion in arrest of judgment disal-
lowed.    Defendant excepted.    Judgment.    Appeal by de-
fendant.

*Case on Appeal.*

This was a criminal action for failing to work road, tried
before a Justice of the Peace of Durham County, and after-
wards on appeal in the Superior Court.    It was admitted that
A. H. Stokes was duly elected Superintendent of Roads for
Durham County; that the county had been duly divided into
road districts; that I. W. Shields was duly elected Super-
visor of Durham Township in Durham County, and that the
defendant is 41 years old, and an able-bodied man.

I. W. Shields, Supervisor, and a witness for the State,
testified that on August 12, 1899, he left a notice to work
roads at defendant's residence.    It was in writing, and he
gave it to a servant at defendant's residence.    "Sharp lives in
my road district.    The notice specified a place to work and
to meet.    I had plenty of tools, and did not put in any tools.
Notice required defendant to appear on public roads, begin-
nings at Watts's Hospital, at 7 a. m., on the 17th and 18th of
August, 1899."

The defendant objected to witness testifying about notice
without producing it.    Overruled, and exception by defend-
ant.    First exception.

"Defendant did not pay me any money in lieu of working
roads.    He lives in North Durham."

A. H. Stokes, a witness, testifies:    That he is County
Superintendent of Roads, and that defendant paid in no
money to him in lieu of working the road.

S. Bowling, a witness for the State, testifies:    That he was
County Treasurer since last December, and also Treasurer of
the Road Fund.    Defendant paid him no taxes, money in

lieu of working the public roads. Public Acts of 1899, chap. 581, offered in evidence.

The defendant offered Private Acts of 1891, chap. 186, it being the charter of North Durham, which, it is agreed, may be read in evidence in the Supreme Court, from the bound volume.

Defendant, Sharp, testified: "I live in North Durham. B. L. Duke is Mayor of North Durham, and it has a Board of Commissioners. I am one of them. It has accepted its charter and acted under it. I have paid for cleaning up and keeping up the streets of North Durham. It was a gift from me and not a tax. I paid no road tax to the county, and no money in lieu of working the roads. I do not live in the corporate limits of the town of Durham, but do live in the corporate limits of North Durham."

That was all the evidence. The Court thereupon charged the jury, that if they believed the evidence, the defendant was guilty.

The jury returned a verdict of guilty. Motion for a new trial. Motion overruled and exception.

Motion in arrest of judgment. Motion overruled and exception.

Appeal to the Supreme Court. Notice of appeal waived in open court. Bond of $25.00 adjudged sufficient. Twenty days to serve statement of case on appeal, and twenty days to serve counter case.

September 13, 1899.

BOONE & BRYANT,
WINSTON & FULLER,
*Attorneys for Defendant.*

The foregoing is accepted as the case on appeal.

September 18, 1899.

A. L. BROOKS,
*Solicitor of Fifth Judicial District.*

STATE v. SHARP.

*Messrs. Winston & Fuller,* and *Boone, Bryant & Biggs,* for appellant.

*Messrs. Manning & Foushee,* and *Chas. E. Turner,* with the *Attorney-General,* for the State.

CLARK, J. The defendant is indicted for a failure to work the public roads of Durham County, as required by secs. 4 and 24, chap. 581, Laws 1899.

The first exception was, that the Court permitted the road overseer to testify that he left a written notice at the defendant's residence, specifying time and place for working the roads, without producing the same. This was not error, because the statute requires the notice (not a copy of it) to be left with the defendant. As the overseer could not produce it, he could, therefore, state what it was. It is not the return of process to a court. Besides, the issue is not as to the contents of the notice, which is in the defendant's possession, and the contents could be proved for that reason, but the collateral fact that it was served. *State v. Wilkerson,* 98 N. C., 696; *Carden v. McConnell,* 116 N. C., 875; *Archer v. Hooper,* 119 N. C., 581.

The next exception is, that the act requires all the citizens of Durham County to work the public roads, except citizens of the town of Durham, and the defendant is also an inhabitant of an incorporated town, to-wit, North Durham. But that is a matter left to legislative authority, and if it worked any hardship, liable to be changed by any subsequent Legislature. This act authorizes some counties to work the roads in the mode therein prescribed, i. e., partly by taxation, and partly by labor, leaving the other counties, generally, to work their roads in the old method, by labor alone. And there are still others in which the roads are worked entirely by taxation. Among the counties authorized to work by the mixed

system, partly labor and partly by taxation, the general rule, laid down in sec. 4, is to exempt citizens of incorporated towns from labor on the roads, but in sec. 24, as to Durham County, only the inhabitants of the town of Durham are thus exempt. By sec. 22, this mixed system is made imperative as to certain counties or townships named. By sec. 23, its operation in other counties and townships, therein specified, is made conditional upon the adoption of the provisions of the act by the County Commissioners; and still other sections contain modifications of the act as to specified counties and townships, and sec. 27 specifies counties exempt from the provisions of the act. This legislation was to meet the varying phases of public sentiment in regard to the important matter of working the public roads. A method which would be satisfactory in some counties might, for local reasons, or by reason of a difference in public sentiment, be altogether unadvisable and unacceptable in others. Being altogether a local matter, the Legislature has endeavored to meet the views of each locality. If it has made any mistake as to the wishes of any locality, or should there be a change of sentiment in any, any subsequent General Assembly can amend the act.

Local legislation of this nature has been very common in North Carolina, and has always been held to be within the powers of the Legislature: as to local liquor prohibition acts, *State v. Muse,* 20 N. C., 319; *State v. Joyner,* 81 N. C., 534; *State v. Barringer,* 110 N. C., 418; fence laws, *Cain v. Commissioners,* 86 N. C., 8; *State v. Snow,* 117 N. C., 774; restricting sale of seed cotton in certain counties, *State v. Moore,* 104 N. C., 714; local prohibitions as to cattle running at large, *Broadfoot v. Fayetteville,* 121 N. C., 418; local differences in the methods of electing Town and City Commissioners, *Harris v. Wright,* 121 N. C., 172; in the method of electing County Commissioners, *Lyon v. Commissioners,* 120

STATE *v.* SHARP.

N. C., 237; local provisions as to public schools, *McCormac v. Commissioners,* 90 N. C., 441; local dispensaries for sale of liquor, *Guy v. Commissioners,* 122 N. C., 471; and, indeed, in this very matter of the method of working public roads, *Tate v. Commissioners,* 122 N. C., 812; *Brown v. Commissioners,* 100 N. C., 92; *Herring v. Dixon,* 122 N. C., 420; and in many other matters, *Intendent v. Sorrell,* 46 N. C., 49, and other cases.

The provision as to Durham County simply divides the county into two road districts, one consisting of Durham town, and the other of the rest of the county, an arrangement which is held valid in *Broadfoot v. Fayetteville, supra.*

The defendant's counsel strenuously insists that the method of working the public roads by conscription of labor is unjust, in that it falls to the same extent upon the poor man, who has not a wheeled conveyance, and upon him who has many, and that, indeed, if the latter happens to be above the road age, he may use the road by an unlimited number of vehicles, without contributing in the slightest degree to keeping that road in order. It is a matter of common knowledge that the system of working the public roads by conscription of labor is expensive, wasteful and inefficient. It, perhaps, was suited to a former age, when roads were little used, when labor could be furnished without inconvenience, by any able-bodied man, to do the little work required, and money was a scarce commodity. Because of its inefficiency, and possibly from a growing conviction of the essential injustice of the system, and the increasing inequality under present conditions of the burdens laid by working the roads under that system, there has been a steady growth of legislation (beginning with Mecklenburg County, in which so many progressive measures have started) away from the old system, and in the direction of having them worked by taxation. The present stage of public sentiment,

varying in different counties, and even townships, is doubtless fairly represented by the variant provisions of the act now before us. It is in the power of future Legislatures to extend its provisions at their will, till the roads shall be worked entirely by taxation throughout the State, but that is a matter which rests with the legislative department of the Government.

We can not agree with counsel that requiring the defendant to work the roads is a tax, and, therefore, unconstitutional, because not levied *ad valorem* in proportion to property. It is not a tax at all, within the meaning of the constitutional provision, which requires the prescribed equation between poll and property tax to be observed. It is not a tax, but a duty, like service upon a jury, grand jury, special venire, military service, or as witness, (*Town of Pleasant v. Host,* 29 Ill., 490; *Fox v. Rockford,* 38 Ill., 451), which duties formerly were, and, to some extent, are still, required to be rendered to the State without compensation. With the increased wealth and consequently increased use of roads and need for better roads, this duty will become more onerous and unequal, and there will probably be an acceleration in the movement to substitute a taxation upon property in lieu of it. But a duty so long recognized as such, which was universally exacted at the time of the adoption of the present Constitution, and which has been recognized ever since, can not now be deemed and held a tax, and, therefore, unconstitutional. Till 1868 the method of working the roads was left entirely to the Legislature to prescribe, and if there had been any intention to restrict the power of the Legislature in that regard, or to change the common-law duty of the citizen (1 Bl. Com., 358) to work them into a tax, there would have been some express provision to that effect inserted in the new Constitution.

There have been numerous decisions of this Court since

1868 sustaining indictments for failure to work the public roads, and necessarily sustaining the constitutionality of such statutes, though the point was not expressly raised, the latest case being *State v. Joyce,* 121 N. C., 610. The defendant moves in arrest of judgment, because the warrant does not describe the offense charged. The affidavit sets out the charge in full, and at the foot the Justice of the Peace has added his warrant in proper form, but inserting "to answer the above complaint," without reiterating the particulars of the charge. This incorporates the charge in the affidavit into, and makes it a part of, the warrant. This was expressly decided in an exactly similar case for this same offense (*State v. Sykes,* 104 N. C., 694), which has been cited and reiterated as to all offenses, in *State v. Davis,* 111 N. C., 729; *State v. Wilson,* 106 N. C., at p. 721, and in other cases. The defendant contends that the prior case of *State v. Bryson,* 84 N. C., 780, is in conflict with these. If it were, the later repeated decisions would govern, but in fact *State v. Bryson* merely holds that "the affidavit being not an essential part of the warrant, if the warrant itself charges a criminal offense, it will be sustained." The later cases above cited hold "the affidavit and warrant in contemplation of law are one, if one is referred to in the other," and if, together, they constitute a charge of a criminal offense, it will be sufficient.

Affirmed.