STATE v. HOLLOMAN.

(Filed December 12, 1905).

*Roads and Highways—Method of Working—Power of Legislature — License Taxes — Board of Supervisors — Penalties.*

1. Chapter 259, Laws 1905, prescribing a method for working the roads in Hertford County and providing in section 17 thereof that any person desiring to use the roads of a township for the carrying on of his business of hauling mill logs or other heavy material with log wagons or other heavy vehicles, shall first obtain a license by paying an annual license tax to the board of supervisors, and further providing that any person violating this section shall be guilty of a crime and liable to a penalty, deprives no citizen of any right to use the highway. It does not restrain trade, nor is it oppressive, but exceedingly equitable.

2. Where, under the authority of section 23, providing that section 17, above set out, shall not be enforced by any township unless a majority of the board of supervisors of that township shall vote to enforce it, a majority of the board of a certain township adopted the provisions of section 17, the defendant cannot avail himself of the fact that no written notice of the action of the board was served upon him, as the law did not require written notice and it appears that he had verbal notice.

3. The Legislature can provide a special road law and method of working the public roads for a county, or several counties, or a township or other locality, and make the adoption of such systems depend upon the acceptance or rejection thereof by the people or the landholders, or by the official board of such county, township or locality.

4. The license tax provided for in Laws 1905, chap. 259, is simply a mode of regulating the use of the public roads and requiring that those desirous of using them, for extraordinary purposes, as hauling heavy lumber and logs over the roads in unusually heavy vehicles, shall not do so without taking out a license for such unusual and extraordinary and injurious use of the public highway, and paying a license tax for the privilege.

5. The Legislature has complete power to regulate the highways in the State and may prescribe what vehicles may be used on them, with a view to the safety of passengers over them and the preservation of the roads, and this power may be conferred upon local governing agencies and its being put into effect can be made dependent upon the action of the board of supervisors.

6. It is for the Legislature to prescribe by what methods the roads shall be worked and kept in repair,—whether by labor, by taxation of property, or by funds raised from license taxes, or by a mixture of two or more of these methods—and this may vary in different counties and localities.

7. Under Laws 1905, chap. 259, the State prosecutes for the misdemeanor and the board of supervisors can sue for the penalty.

INDICTMENT against Luther Holloman for an unlawful use of the public roads, under sections 17 and 23 of chapter 259, Public Laws of 1905, relating to the highways of Hertford County, heard by *Judge R. B. Peebles* and a jury, at the Fall Term, 1905, of the Superior Court of HERTFORD County. From a judgment of not guilty upon a special verdict, the solicitor for the State appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
No counsel for the defendant.

CLARK, C. J. The General Assembly, Laws 1905, chap. 259, prescribed a carefully drawn method for working the public roads in Hertford County. Section 17 thereof provides: "That any person, firm or corporation desiring to use any of the public roads of a township for carrying on his or its business of hauling mill logs or timber or other heavy material with log wagons, log carts or other heavy vehicles shall first obtain a license for this purpose from the board of supervisors of the township in which he or they may desire to operate and make use of the roads, by paying an annual license tax of fifteen dollars for each wagon or cart or vehicle of the kind above described to be used, which tax shall

be paid to the treasurer of the board fund and placed to the credit of the board of supervisors of the township, to be used by the board as other funds for said township.  Any person violating this section shall be guilty of a crime and liable to a penalty of fifty dollars, to be recovered in an action by the board of supervisors of roads of the township where the offense took place, for the benefit of the road fund of that township."  And section 23 provides: "That section 17 of this act shall not be enforced in any township unless a majority of the members of the board of supervisors of that township shall vote to enforce the same."  Section 12 authorizes the levy by the county commissioners of a county tax on property for road purposes, such tax to be used in the township from which it is derived, and section 24 provides that one-half the net proceeds of all dispensaries for the sale of liquor in the county shall be apportioned *per capita* among the several townships and used by the board of road supervisors of each township to be used solely for repairing the public roads therein.

The special verdict finds that the majority of the justices of Murfreesboro township on 3 June, 1905, under authority of section 23 of said act, adopted the provisions of section 17, above set out, and imposed the license tax of $15 upon all persons or corporations using the roads of said township for carrying on their business of hauling mill logs or timber or other heavy material with log wagons, log carts and other heavy vehicles, and that the defendant had verbal notice both from a justice of the peace and member of the board of road supervisors of said township, and also from the secretary of said board, of such action, and that the law was in force requiring a license tax of $15, but the defendant nevertheless continued the business of hauling logs over the public roads in said township with log wagon and team after having received the verbal notices aforesaid, without taking out license or paying the license tax, until

later upon receiving written notice that the board had refused to rescind the order, he discontinued using the public roads for hauling logs with log wagons.

As the law did not require written notice of the action of the board under section 23, the defendant cannot avail himself of the fact that no written notice was served upon him. The special verdict finds that he had notice that the law had been put in force in said township by virtue of the authority conferred by section 23 of the act, above set out. The public roads are for ordinary use, and it is common knowledge that when used by heavy vehicles hauling heavy logs and timber over them, the roads are cut up and require an extraordinary expenditure to be kept in order. The general public might well complain at being called upon to bear this additional expense for the profit of the lumber companies using the road, not for ordinary travel and usage, but for their individual benefit, not as members of the community, but in the prosecution of a special and usually temporary but profitable business.

That the General Assembly can provide a special road law and method of working the public roads for a county or several counties, or a township or other locality, and make the adoption of such system depend upon the acceptance or rejection thereof by the people or the land holders (as with "no fence" laws), or by the official boards of such county, township or locality, is well settled. This is the flexible "local option" system which gives the greatest freedom of local self-government, and has been applied already to the sale of liquor, to fence laws, to the sale of seed cotton, to cattle running at large, to variations in the methods of electing town commissioners and in the mode of selection of county commissioners, to local provisions for public schools, to dispensaries, to close season for game, to this very matter of working the public roads, and in many other

instances.   State v. Sharp, 125 N. C., 632, and cases there cited.

This license tax is simply a mode of regulating the use of the public roads and requiring that those desirous of using them for extraordinary purposes, as hauling heavy lumber and logs over the roads in unusually heavy vehicles, shall not do so without taking out a license for such unusual and extraordinary and injurious use of the public highway, and paying a license tax for the privilege.   This statute prescribes that the license tax shall be "placed to the crédit of the board of supervisors of the township, to be used by the board as other funds for said township."   As all the funds of each board of road supervisors are to be used "solely for road purposes in its township," the evident purpose is to use these license taxes to make good the extra cost of road maintenance entailed by the use of the public road by heavy vehicles in hauling heavy logs and timber by these lumber companies and others.

In State v. Yopp, 97 N. C., 477, it was held that: "The Legislature has complete power to regulate the highways in the State and may prescribe what vehicles may be used on them, with a view to the safety of passengers over them and the preservation of the roads."   This power may be conferred upon local governing agencies.   Elliott R. & S. (2nd Ed.), sec. 424; State v. Summerfield, 107 N. C., 895.   And its being put into effect can be made dependent upon the action of the board of supervisors.   State v. Barringer, 110 N. C., 525; State v. Chambers, 93 N. C., 600.

This statute deprives no citizen of any right to use the highway.   It does not restrain trade, nor is it oppressive. Heavily loaded vehicles cut up and injure the public road and a reasonable license tax, the proceeds of which are appropriated to repairing the damage thus produced, is exceedingly equitable.

The method of providing for working and keeping in re-

pair the public roads is a matter solely for the legislative department. The old system of working the roads by conscription of labor was exceedingly inequitable, because it threw the cost of road maintenance upon those deriving the least benefit therefrom—the laboring element. This system was handed down to us by our British forefathers, in whose government that class had small voice, if any, in the adjustment of public burdens. It was a part of the *trinoda necessitas* under the Roman law, and in France, where that system of working the roads was known as *corvees,* it was one of the great grievances which found utterance in the great French Revolution and was swept away. *State v. Covington,* 125 N. C., 644. The change to working the roads by taxation has been complete in most civilized countries, but has been slower in this State than in most. This is fairer than working by compulsory labor, but is far from being entirely equitable, since the taxable property of individuals rarely bears direct proportion to the benefits received from the use of the public roads. An ideal tax probably would be one proportioned to the benefits received by each, but this would be evidently impracticable. The license tax here imposed for raising a fund to be paid by those making extraordinary use of the roadways, to be applied to repairing the extra wear and tear of the roads caused thereby, is an approximation to the just rule of taxation for roads in proportion to benefits received.

In many other States there has been similar legislation which has been upheld by the courts. The cases presenting the question are mostly those in which there has been an abatement of the road tax in consideration of the use of broad tires, an abatement granted by reason of the lessened wear and tear of the roads when those are used. *People v. James,* 16 Hun., 426; *Utica v. Blackeslee,* 46 How. Pr., 165; *Gartside v. East St. Louis,* 43 Ill., 47; s. c., 70 Mo., 562; *Brooklyn v. Breslin,* 57 N. Y., 591; *Nagle v. Augusta,*

5 Ga., 546; *Com. v. Mullhall,* 162 Mass., 496; *Harrison v. Elgin,* 58 Ill., App. 452, and others.

It is for the legislative department to prescribe by what methods the roads shall be worked and kept in repair—whether by labor, by taxation on property, or by funds raised from license taxes, or by a mixture of two or more of these methods—and this may vary in different counties and localities to meet the wishes of the people of each, and can be changed by subsequent Legislatures. This matter has been fully discussed. *State v. Sharp,* 125 N. C., 632, 634.

Under this statute, the State prosecutes for the misdemeanor and the board of supervisors can sue for the penalty. *State v. Parker,* 91 N. C., 650; *State v. Bloodworth,* 94 N. C., 918; *State v. Taylor,* 133 N. C., 755; *School Directors v. Asheville,* 137 N. C., 510.

Upon the special verdict the court should have instructed the jury to find the defendant guilty.

Reversed.