## STATE v. SOUTHERN COTTON OIL COMPANY.

### (Filed 22 March, 1911.)

**1. Fertilizers—Public Benefit—Interpretation of Statutes.**

The purpose of Revisal, sec. 3945 *et seq.*, is to protect the public from the sale of worthless fertilizers, subjecting those violating it to a penalty, section 3956, and making the offense a misdemeanor. Revisal, 3814, 3822.

**2. Same—Indictment—Evidence—Conviction.**

The defendant was tried for selling cotton-seed meal for fertilizer in violation of Revisal. 3597, under an indictment which followed the language of the statute, and the evidence showed that the defendant sold the meal in sacks upon which there were no tags or other indication of the weight of the sacks or the chemical composition of their contents, or other data respecting them, as required by the statute: *Held*, the indictment sufficient in form and the evidence fully justified a conviction; and the fact that the purchaser exchanged cotton seed for the meal was not material.

**3. Fertilizers—Tags—Data—Ingredients—Public Benefit—Defense— Interpretation of Statutes.**

A letter from the State Agricultural Department advising defendant that it would not be necessary to stamp the name and address of the manufactory on the back of the tax receipt is irrelevant as a defense in an action for violating Revisal, sec. 3957, by selling cotton-seed meal for fertilizer without tagging or showing the data required by the statute, which would indicate the weight and chemical composition of the contents of the sacks, etc.

**4. Same—Qui Tam Actions—Constitutional Law.**

It is not unconstitutional for the Legislature to make an act a misdemeanor and also impose a penalty therefor to·be recovered in a *qui tam* action, and Revisal, 3814, 3822, and 3956, making it a misdemeanor and imposing a penalty for the violation of the fertilizer laws to be given in part to the one who shall sue for and recover the same, are constitutional and valid.

APPEAL from *Ward, J.,* at December Special Term, 1910, of PITT.

The defendant stood indicted in the following bill:

"The jurors for the State upon their oaths present, that The Southern Cotton Oil Company, a corporation, late of the

county of Pitt, on the first day of April, 1909, with force and arms, at and in the county aforesaid, did unlawfully and willfully sell and offer for sale to J. R. Bunting a quantity of cotton-seed meal in sacks, said sacks not being branded as is required by law and said sacks containing said meal having tags attached to said sacks which did not contain and did not have branded on the tags ·containing it the following data, to wit: (1) Cotton-seed meal, with brand; (2) weight of package; (3) ammonia or nitrogen; (4) name and address of manufacturer, as required by law, the said meal not being offered for sale or sold to a manufacturer or manufacturers for use in manufacturing fertilizers, against the form of the statute in such case made and provided, and against the peace and dignity of the State."

The defendant was convicted and fined $50, and appealed.

*Attorney-General and G. L. Jones, Assistant Attorney-General, for the State.*
*Moore & Long for defendant.*

CLARK, C. J. Revisal, 3945-3978, contains a careful and comprehensive scheme to protect the public from the sale of worthless fertilizers and injurious foods. The most efficient method of insuring this protection is the requirement therein that the contents of each package must be shown by a label or tag. The requirement of a small tax and the certificate that it has been paid is simply incidental and to provide a means for executing the law by proper inspection and prosecution for violation of its terms. Indeed, in a case that went to the United States Supreme Court it was held that if this tax amounted to more than this the tax would be invalid as an interference with interstate commerce as to all fertilizers and foods shipped in from other States, and, of course, if the law could not be enforced against such shipments it would be a very inefficient protection to enforce it only against foods and fertilizers manufactured in this State. *Guano Co. v. North Carolina,* 171 U. S., 345.

Revisal, 3957, provides that "All cotton-seed meal offered for sale (unless sold to manufacturers of fertilizers) shall have plainly branded on the bag containing it or on a tag attached thereto the following data: (1) Cotton-seed meal, with brand; (2) weight of package; (3) ammonia or nitrogen; (4) name and address of manufacturer." To the same effect, with some additional requirements, is Pell's Revisal, 3945, which was enacted Laws 1907, ch. 670.

Revisal, 3956, makes a violation of these sections subject to a penalty of $10 for each separate bag, barrel, or package "sold or offered for sale, or removed, to be recovered by any person who may sue for the same," and Revisal, 3814 and 3822, make the violation of said provisions a misdemeanor. The indictment against the defendant is for selling cotton-seed meal without labeling it as required by law. The offense is charged in the very language of the statute. The exceptions in the statute, out of abundance of caution, are duly negatived in the indictment.

The evidence is full and uncontradicted that the defendant sold the cotton-seed meal for use as a fertilizer and there was no label of any kind, either on the sack or on the tag attached to the sack, containing the data required. There was nothing to indicate the weight or the chemical composition of the contents of the sack as required by the statute.

The defendant put in evidence the letter of the Agricultural Department, to the effect that it would not be necessary to stamp the name and address of the manufactory on the back of the tax receipt tags of 1909. This in no way affects the failure of the defendant to observe the plain requirement of the statute with respect to the weight and quality of the contents of each bag or package. Even if it had been so expressed and intended, the Department of Agriculture could not excuse or exempt the defendant from its duty to comply with the statute. The defendant is not indicted for failure to pay the tax of 20 cents per ton nor for failure to affix the tags furnished by the Department, showing payment of such tax.

The fact that the purchaser bought the cotton-seed meal by

exchanging a ton of seed for 1,333⅓ pounds of cotton-seed
meal does not make it any the less a sale within the meaning
of the statute.

Revisal, 3814 and 3822, make a violation of the statute such
as the defendant is charged and proved to have committed in
this case, a misdemeanor. Revisal, 3956, also subjects the
party so violating the law to a penalty of $10 for each separate
bag, barrel, or package "sold, offered for sale, or removed with-
out affixing the labels, stamps, and tags required by law."
There is no inhibition in the Constitution which forbids the
Legislature to make an act a misdemeanor and also to impose
a penalty therefor to be recovered in a *qui tam* action. This
has been customary from the earliest times in this State and
in England. *School Directors v. Asheville,* 137 N. C., 510;
*S. v. Holloman,* 139 N. C., 642; Revisal, 3822, 3960.

The constitutional authority of the General Assembly to
aid in the enforcement of the law by authorizing "popular
actions," or *qui tam* actions, as they are sometimes called, in
which the penalty to be recovered is given in whole or in part
to any one "who shall sue for the same," was fully discussed
and sustained in *Sutton v. Phillips,* 116 N. C., 502, and in the
numerous cases therein cited and approved. That case itself
has been repeatedly cited and approved.

No error.