## C. W. BROADFOOT v. TOWN OF FAYETTEVILLE.

*Statutes, Constitutionality of—Exclusive Privileges—Equal Protection of the Laws—Fourteenth Amendment to U. S. Constitution—Owners of Stock Running at Large in Town—Discrimination.*

It is not unconstitutional for the Legislature to prescribe that resident owners of stock found running at large in a town shall pay a higher penalty than non-resident owners, it being a discrimination forbidden neither by Article 1, Section 7 of the Constitution of the State nor by the 14th Amendment to the Constitution of the United States.

ACTION of claim and delivery tried before *Coble, J.,* at Spring Term, 1897, of CUMBERLAND Superior Court. The plaintiff who lives within a mile beyond the corporation limits of Fayetteville brought the action to recover possession of his cow which had been impounded by the Town authorities of Fayetteville and was held for the payment of one dollar poundage allowed by the charter of the town or acts relating to it to be charged for stock running at large in the town. Chapter 154, Acts of 1895, prohibits any town in Cumberland County from charging non-resident owners for stock running at large in the town more than one fourth of the penalty charged to residents and relieves entirely from the penalty non-residents of stock so running at large who live more than a mile from the corporate limits of the town. The plaintiff tendered the sum of twenty-five cents which was refused. The defendant contended that the Act, Chapter 154, Acts of 1895, was unconstitutional in that it violated

the provisions of Article I, Section 7, of the Constitution of North Carolina and the 14th Amendment to the Constitution of the United States. His Honor gave judgment for the plaintiff and defendant appealed.

*Mr. G. M. Rose,* for plaintiff.
*Mr. H. McD. Robinson,* for defendant (appellant).

CLARK, J.:   It was admitted by both parties that the result of this appeal depended upon the constitutionality of Chapters 141 and 154 of the Acts of 1895. These two Acts are substantially identical save that the first applies to the whole State while the latter is applicable to Cumberland County only. The first Section is aimed at the offence of driving live stock into a city, town or other territory in which live stock are forbidden to run at large, with intent to secure the penalty or to injure the owner, or for hire or reward. Violation of this Statute is made a misdemeanor. The second Section, presumably with the object of discouraging the perpetration of the offence denounced in the first Section, provides that the poundage or penalty upon the stock of non-residents of a town or city, which is authorized to impound stock running at large therein, shall not be more than one fourth that levied upon residents, and further that when non-resident owners of cattle taken up in said town live more than a mile from said City limits, there shall be no poundage charged. Chapter 141 differs from Chapter 154 in that it exempts such last named owners of stock, not altogether, but only for the first three times that the same cattle are impounded. But Chapter 154, which applies to Cumberland County only, governs in this case, as it was ratified later.

It was seriously argued to us that these Acts are unconstitutional because in violation of Article 1, Section 7, of the Constitution of North Carolina, which forbids exclusive priv-

ileges and emoluments to be granted to any set of men. Then, it was further urged that the Acts were obnoxious to the inhibition of the 14th Amendment to the Constitution of the United States, which provides that no State shall deny to any person within its jurisdiction the equal protection of its laws. We find in the Statute, however, no violation by the legislature of the organic law of the State or the United States, but simply a police regulation. The Act is based upon the idea that residents of the town, who know that stock are not allowed to run at large therein, are more blamable for permitting them to do so than non-residents whose stock (turned out where it is permissible) by chance, or perhaps driven by some one who wishes to make a profit thereby or injure the owner (as is indicated by the first Section of the Act), get into the town limits and violate the majesty of its ordinances.

The Statute further takes cognizance of the ordinary things of life in proceeding upon the assumption that the stock of owners living more than a mile from town are so little disposed to leave their native meadows and ranges in order to tramp the barren streets and sidewalks of the distant town; that their doing so is not attributable to negligence in their owners, and is more likely to be caused by designing persons. Hence, in the County of Cumberland, such distant owners are not punishable at all, and under the general Act (Chapter 141) only when the same stock have developed such fondness for the town as to have been caught parading its streets three times before.

In these provisions we see no "exclusive or separate emoluments or privileges" to any set of men. It was once contended that non-residents, not being subject to town regulations, were not liable at all when their stock invaded the town limits. But it was held that they were, as legislation then stood. *State* v. *Tweedy*, 115 N. C., 704; *Rose* v. *Hardie,*

98 N. C., 44; *Whitfield* v. *Longest*, 28 N. C., 268; *Hellen* v. *Noe*, 25 N. C., 493. But in this there was no denial of the power of the legislature to provide that owners of cattle which should stray a mile or more to get into the town limits (which they were so little likely to do of their own volition or by that of their owners) should be exempt from the penalty visited upon residents of the town, who should negligently or intentionally let their cattle roam the streets, and that those living outside the town limits but within a mile should be punished less than residents of the town. The latter know that their stock must roam the town if turned out at all. Non-residents do not. It has never been held that the special privileges and advantages given the residents of towns by town charters come within the constitutional inhibition against special privileges, and neither can it be justly contended that an exemption partial or entire, of non-residents, from the penalty for violation of a town ordinance by their stock is unconstitutional. Residents in the country receive none of the benefits, and if they are made exempt from some of the burdens, of the towns which depend upon them for existence and support, the grievance, if any results, must be removed by the legislature.

Still less is this legislation obnoxious to the "14th Amendment" which is now invoked on all occasions, and if given the scope which has been claimed for it, would swallow up the jurisdiction of the State Courts as to every matter. It would be like the old fiction of *Quo Minus* by which, in England, the Exchequer Court, which had jurisdiction only over matters touching taxation, drew into itself both common law and equity jurisdiction of all other actions (which it was not intended to have) upon the fiction that by committing any injury or damage upon the plaintiff, or failing to pay a debt due him, *quo minus sufficiens existit*, he is less able to pay his taxes. 3 Blk. Com., 45. But this attempt to make a modern *quo minus* and an Aaron's Rod of a Con-

stitutional Amendment, which was enacted to protect a recently emancipated race from inequality before the law, has been so often rebuked by the Supreme Court of the United States that it is only necessary to cite a few cases—*Slaughter House Cases*, 83 U. S., 36; *Pembina* v. *Penn.*, 125 U. S. 188; *Re Kemmler*, 136 U. S., 448. "Legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment." *Barbier* v. *Connelly*, 113 U. S., 32. It "does not prohibit legislation which is limited either in the objects to which it is directed or by the territory in which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions." *Hayes* v. *Missouri*, 120 U. S., 71. In *Missouri Railroad Co.* v. *Mackey*, 127 U. S., 107, the Court held that a Statute of Kansas, making railroads responsible for injuries sustained by their employees when caused by the negligence of fellow servants, was valid and not forbidden by the 14th Amendment although the Act did not apply to any other corporations than railroads, nor to other employers. The same ruling was made, as to a similar Statute in Iowa, in *Railroad Co.* v. *Herrick*, 127 U. S., 109, and has been cited and approved in *Railroad Co.* v. *Matthews*, 165 U. S., (November 1896), which reviews the whole subject and holds, citing many decisions, that as a rule Statutes making classifications are not forbidden by the 14th Amendment, when they bear equally upon all within each class.

Accordingly it has been often held in this Court that a public local Act making that an offence in one district which is not so in another is a constitutional exercise of the police power, if the Act bears alike on all persons within a defined locality, and is within the discretion of the legislature, as local prohibition Acts. *State* v. *Joyner*, 81 N. C., 534; *State* v. *Stovall*, 103 N. C., 416; *State* v. *Barringer*, 110 N. C., 525;

*State* v. *Snow*, 117 N. C., 774; or restricting the sale of seed cotton in certain localities.    *State* v. *Moore*, 104 N. C., 714.

Here, three districts are created, *i. e.*, the town limits, the territory within one mile of the town limits, and the territory beyond the one mile.    The law is uniform and bears alike upon the residents within each of the designated districts.    It is not a discrimination between persons, but a Statute applying differently to different districts.    A somewhat similar instance is the dividing a city into small districts for local assessments for improvements, those in each district being taxed at a different rate from those in others.    *City of Raleigh* v. *Peace*, 110 N. C., 32; *Hilliard* v. *Asheville*, 118 N. C., 845; *Walston* v. *Nevin*, 128 U. S., 578.    While not exactly analogous, the decisions on this point demonstrate that such and similar matters are not withdrawn from legislative action by any prohibition in the State or Federal Constitution.

No error.