E. J. ANGELO, HARRY PHILLIPS AND C. E. WALL, TRADING AS PHILLIPS MEAT MARKET; R. L. POTTER, TRADING AS STAR MARKET; J. S. MOSER, TRADING AS MOSER CASH STORE; R. E. BENNETT AND T. S. BENNETT, TRADING AS BENNETT BROTHERS; W. S. TILLEY AND E. R. LINVILLE, TRADING AS TILLEY & LINVILLE; A. L. TURNER AND M. B. WILSON, TRADING AS TURNER & WILSON; W. S. COOPER, TRADING AS SANITARY MARKET; BASKETERIA, INC.; WHITE HOUSE MARKET, INC.; E. G. SELF, J. H. MUSE, G. W. HAWKINS, C. M. WILLIAMS, J. A. LITTLE, R. S. MOSER, O. G. ALLEN, O. F. BROWN, W. E. BOWEN, A. L. KIRBY AND R. C. RIGHT v. CITY OF WINSTON-SALEM, THOMAS BARBER, MAYOR OF THE CITY OF WINSTON-SALEM, AND J. A. THOMAS, CHIEF OF THE POLICE OF THE CITY OF WINSTON-SALEM.

(Filed 26 January, 1927.)

1. **Health—Municipal Corporations—Cities and Towns — Ordinances—Markets—Perishable Goods.**

   A city in the exercise of statutory authority may enact a valid penal ordinance as affecting the health of its citizens, and under its police power, require that meats, fish, oysters and perishable matter be sold at a sanitary market building containing refrigeration and other sanitary methods, under proper inspection, where adequate accommodation may be obtained at a reasonable rental, and may exclude such business within a prescribed territory therefrom, the location of the market-house being reasonably suitable to the business or trades specified.

2. **Courts—Judicial Notice—Health—Police Powers — Perishable Merchandise.**

   The courts will take judicial notice that the sale of meats, fish, vegetables, etc., within the limits of a populous city affects the health of its citizens and falls within its police powers.

3. **Same—Constitutional Law.**

   Where in conformity with a valid city ordinance dealers in meats, fish, oysters, etc., have made sanitary provision for their sale, expending moneys, etc., for the purpose, a later ordinance which excludes their location from one prescribed does not deprive such dealer of the property rights under our Constitution, where ample means and facilities are properly provided to take care of all who may apply, and at a reasonable rental.

4. **Appeal and Error—Injunction — Evidence — Conclusions of Fact—Burden of Proof.**

   In the Supreme Court, an appeal in injunction is not confined to the facts found by the Superior Court judge upon the evidence of record, but the burden is on the appellant to show error therefrom.

APPEAL by plaintiffs from *Lane, J.,* refusing to grant permanent restraining order, 6 September, 1926, of FORSYTH. Affirmed.

This is an action instituted in the Superior Court of Forsyth County by plaintiffs, retail fresh meat and fish dealers, for the purpose of obtain-

ing an order permanently restraining the defendants from enforcing an ordinance of the city of Winston-Salem, adopted 18 June, 1926, prohibiting the sale of fresh meats or fish within a defined area of the city except at the municipal market, the ordinance to become effective on and after 1 December, 1926. From a judgment of the court below refusing such permanent restraining order, the plaintiffs assigned error and appealed to the Supreme Court.

The necessary facts will be considered in the opinion.

*Wallace & Wells and Raymond G. Parker for plaintiffs.*
*Parrish & Deal for defendants.*

CLARKSON, J. The charter of the city of Winston-Salem (chapter 180, Private Laws 1915, sec. 44), provides: "The board of aldermen shall have the power to enact ordinances in such form as they may deem advisable, as follows: . . . *To establish, regulate and control the markets or market building; to fix the location of any market building, prescribe the time and manner and place within the city wherein marketable articles, such as meats, perishable vegetables, fish, game, and all other kinds of perishable food or diet shall be bought or sold:* . . . On behalf of the general welfare of the city of Winston-Salem, and for the good order and government thereof, the board of aldermen may, in addition to the foregoing powers, pass or ordain any resolution or ordinance, and enforce the same by proper punishment or penalty, which it may consider wise or proper, not inconsistent with the Constitution and laws of the State." C. S., 2674, 2787, sec. 20, 2791, 2794.

The ordinance of Winston-Salem, enacted 18 June, 1926, is as follows: "Section 630. Adopted 18 June, 1926. B-3827.

"Be it ordained, (a) That, for the protection of the public health, and in order to facilitate inspection of fresh meats and sea-food, for the enforcement of sanitary regulations, and for the general welfare of the community, it shall be unlawful for any person to sell or offer or expose for sale at retail any fresh meats or fowl, as defined in section 499 of the general ordinances, or fish, oysters or other fresh sea-food, but not including wild game, at any place within that portion of the city hereinafter described, except at a stall or stand in the city market at the corner of Sixth and Cherry streets, duly licensed for that purpose. (b) That this section shall apply to the following territory (estimated from record by court): Such area extending approximately four-fifths of a mile from the new city market in every direction, and containing an area of 2.1 square miles. The total area of the city is 12.33 square miles. (c) That this section shall not affect or modify the provisions of sections 500 and 503 of the general ordinances, relating to the sale of fresh meats at wholesale, the sale as a whole of calves, hogs, goats or

sheep, and the sale of sausage and other meat products as therein provided. (d) That this section shall be in effect from and after 1 December, 1926."

The defendants allege and contend, in substance: That prior to 1 July, 1925, the city maintained a public market at the old city hall on Fourth and Main streets. This market had become inadequate, and the city undertook the erection of a new and adequate municipal market, completing the same 1 July, 1925, at the following cost:

| | |
|---|---|
| Grounds | $133,787.00 |
| Buildings | 224,813.19 |
| Equipment | 88,819.56 |
| Total | $447,419.75 |

This market building is splendidly designed and equipped. It is located on a lot 175 feet by 420 feet. It is built of brick and concrete, of fireproof construction. It is approximately 100 feet wide and 245 deep. The grounds are equipped with refrigerators and refrigerator counters for meat markets, an adequate number of stalls equipped as fish markets, and an adequate number of grocery and provision stalls. It also contains ample space to meet all needs for a long time to come. The offices of the meat inspectors of the city are located on the main floor of the market building. The basement of the market contains storage rooms and refrigerating and heating equipment. It contains a modern ammonia-compressor refrigerating system which will maintain low temperature in every refrigerator and refrigerator counter in the market, with which each market stand in the market is equipped. The photographs filed as exhibits, showing the exterior and interior and equipment of the market building, fully corroborate the above statements.

The market building is conveniently and centrally located. It is located as nearly in the center of the city as it is possible for it to be, on Sixth and Cherry streets, each of which are 60 feet in width, which is the width of all business streets in the city of Winston-Salem. It is within one block of the Robert E. Lee Hotel; within two blocks of the eighteen-story Nissen building, the largest building in the city; one and one-half blocks of North Liberty Street, one of the most important streets in the city of Winston-Salem, on which is located a street car line; and three and one-half blocks from the courthouse square.

The rentals for spaces in the market have been fixed by the board of aldermen at fair and reasonable rates. Efficient management has been provided for the market. Reasonable and proper ordinances for the

ANGELO *v.* WINSTON-SALEM.

INTERIOR OF MARKET

purpose of maintaining the market in a sanitary condition have been adopted and machinery provided for their enforcement.

While the record does not show that existing markets in the territory affected by the ordinance in question are insanitary or are operated in violation of ordinances at present in effect, it does show that the conditions in the markets in such territory do not compare favorably with conditions in the city market, as to buildings, equipment and general sanitary conditions; that the inspection of the meat market can be much more easily and efficiently performed by the meat inspectors of the health department by reason of the fact that all markets in the central portion of the city will be located in the city market.

This market is not operated by the city for the purpose of revenue or profit, but for the purpose of protecting the health and promoting the general welfare of the city. Assuming the market operated at full capacity, there would still be a deficit to be met out of the general funds of the city.

On 18 June, 1926, the board of aldermen of the city of Winston-Salem enacted an ordinance which will after 1 December, 1926, make it unlawful to sell at retail fresh meats or sea-foods at any place within a defined area of the city except in the city market, such area extending approximately four-fifths of a mile from the new city market in every direction, and containing an area of 2.1 square miles. The total area of the city is 12.33 square miles.

This zone includes the main business and retail parts of the city. Retail meat and fish markets have been maintained in it for years, and, of course, sanitary regulations have been in effect as to such places of business for a long time. Ordinances of the city already in effect prior to 18 June, 1926, are set out in the complaint.

No licenses or permits have been issued by the city to the plaintiffs, or to any other persons to engage in the business of retail meat or fish dealers within such area after 1 December, 1926.

The court below took judicial notice of the fact that it is one of the prime duties of a municipality to protect the health of its inhabitants by means of careful inspection of perishable foods, such as meats and fish, by means of the enactment of adequate sanitary regulations and their proper enforcement; also that while particular individuals may operate meat and fish markets in an entirely sanitary manner, yet, this business in general is one which requires careful inspection and supervision or abuses will arise greatly to the detriment of the public. Practically all legislative bodies having jurisdiction over this subject have enacted such legislation.

The plaintiffs, on the other hand, allege and contend, in substance: That this action is by twenty-one market owners, who have invested

$71,134, and whose good will and going business is worth $50,000, handling fresh meat and sea-food in Winston-Salem, asking that the defendants be permanently restrained from putting into effect an ordinance of the city of Winston-Salem adopted by the board of aldermen on 18 June, 1926. The ordinance provides a zone, covering only a part of the incorporation of Winston-Salem, in which territory are the places of business of the plaintiffs, and attempts to legislate them out of business, wrecking their businesses, rendering valueless large investments and destroying their vested rights, by providing that after 1 December, 1926, no market or place of business handling fresh meat or fresh sea-food shall be carried on, except in a market building owned by the city. Prior to the adoption of the ordinance in question, the city of Winston-Salem passed the most rigid ordinances relative to the handling of such food and requiring the most up-to-date sanitary and refrigerating equipment. In accordance with these ordinances the plaintiffs invested large amounts of money and freely complied with them. Thereafter the city built a municipal building, in an out-of-the-way location, in the midst of farmers tobacco warehouses, livery stables, guano dealers and wholesale houses, away from all street car lines, some distance from the nearest jitney route, and approached by extremely narrow streets which are crowded and congested with traffic. This market building proved unpopular, the people not patronizing it. Then it was that the city desired to ruin plaintiffs by passing the ordinance of 18 June, 1926. Many citizens appeared in person before the board of aldermen and more than 11,000 (7,000 white and 4,000 colored) petitioned that the said ordinance be not enacted.

An injunction can be sought in an action of this kind and the rule is conceded by the parties to this action as set forth in *Pierce et al. v. Society of the Sisters,* etc., 268 U. S., 510, 45 Sup. Ct. Rep., 571, 69 L. Ed., 1070, known as the *School case* from Oregon: "But they have business and property for which they claim protection. These are threatened with destruction through the unwarranted compulsion which appellants are exercising over present and prospective patrons of their schools. And this Court has gone very far to protect against loss threatened by such action. *Traux v. Raich,* 239 U. S., 33; . . . *Traux v. Corrigan,* 257 U. S., 312; . . . *Terrace v. Thompson,* 263 U. S., 197," . . . *Turner v. New Bern,* 187 N. C., 541 (concurring opinion); *Advertising Co. v. Asheville,* 189 N. C., p. 737; *Moore v. Bell,* 191 N. C., 305; *Wood v. Braswell,* 192 N. C., 588.

The court below found no facts, but "ordered, adjudged and decreed that the plaintiffs' application be and the same is hereby denied and the plaintiffs' action is hereby dismissed," and allowed a temporary restraining order until the action could be heard by the Supreme Court.

In *Wentz v. Land Co., ante,* 32, it is said: "In injunction proceedings this Court has the power to find and review the findings of fact on appeal, but the burden is on the appellant to assign and show error, and there is a presumption that the judgment and proceedings in the court below are correct." *Sanders v. Ins. Co.,* 183 N. C., p. 66; *Davenport v. Board of Education,* 183 N. C., 570.

A market-house has always been held in this State to be a necessary expense for a municipality. *Smith v. New Bern,* 70 N. C., 14; *Wade v. New Bern,* 77 N. C., 460; *Swinson v. Mt. Olive,* 147 N. C., 611; *LeRoy v. Elizabeth City,* 166 N. C., 93.

Whatever we may think of the hardship involved, the ordinance is a valid exercise of police powers vested in the board of aldermen of Winston-Salem under the decisions of this Court. The learned attorneys for the plaintiffs realize this, and in their brief say: "If this Court should be of the opinion that this case falls under the decisions of the *Perry* and *Pendergrass cases,* . . . then they should be overruled."

In *S. v. Pendergrass,* 106 N. C., p. 664, the ordinance was, "No person shall sell any fresh meats within the corporate limits of the town of Durham outside the market-house of said town: *Provided,* that this ordinance shall not apply to persons selling beef of their own raising by the quarter." A suitable and convenient market-house had been provided. This was held to be a valid exercise of the police power. The ordinance is general in its character and applies to all alike.

In *S. v. Perry,* 151 N. C., p. 661, the ordinance was as follows: "No person shall sell any fresh fish within the incorporated limits of the city of Fayetteville, outside of said market-house in said city: *Provided,* that fresh fish which are caught in the streams and waters in Cumberland County, when offered for sale in a fresh condition, shortly after they are caught, may be sold within the said city, at such places and points as may not be prohibited by law." This ordinance was held to be a valid exercise of the police power. *Hutchins v. Durham,* 118 N. C., 457; *McIntyre v. Murphy,* 177 N. C., 300.

In *Natal v. Louisiana,* 139 U. S., 621, 35 L. Ed., 293, *Mr. Justice Gray,* speaking to the question, says: "The plaintiffs in error contended in the recorder's court, and afterwards assigned for error, that their privileges and immunities as citizens of the United States had been abridged, and that they had been deprived of liberty and property without due process of law, and had been denied the equal protection of the laws, contrary to the Fourteenth Amendment of the Constitution of the United States. The case is too plain for discussion. By the law of Louisiana, as in States where the common law prevails, the regulation and control of markets for the sale of provisions, including the places and the distances from each other at which they may be kept, are mat-

ters of municipal police, and may be intrusted by the Legislature to a city council, to be exercised as in its discretion the public health and convenience may require. (Citing numerous authorities.) The ordinance of the city of New Orleans, prohibiting the keeping of a private market within six squares of any public market of the city, under penalty of a fine of twenty-five dollars, and of imprisonment for not more than thirty days if the fine is not paid, was within the authority constitutionally conferred upon the city council by the Legislature of the State."

In *Ex parte Byrd,* 84 Ala., 17, 20, 5 Am. St. Rep., 328, the Court said: "While the power 'to regulate' does not authorize prohibition in a general sense, for the very essence of the regulation is the existence of something to be regulated, yet the weight of authority is to the effect that this power confers the authority to confine the business referred to to certain hours of the day, to certain localities or buildings in the city, and to the manner of its prosecution within those hours, localities and buildings."

Supporting the principle set forth in, the opinions above quoted, are McQuillin, Municipal Corporations, secs. 965, 6; Dillon, Municipal Corporations, 5 ed., sec. 705; *City of New Orleans v. Faber,* 29 So., 507, 105 La., 208; *Tomassi v. City of San Antonio,* 268, S. W., 273; *S. v. Gisch,* 31 La., Ann., 544; *City of New Orleans v. Graffina,* 27 So., 590, 52 La. Ann., 1082; *Shelton v. Mayor of Mobile,* 30 Ala., 540; *Jacksonville v. Ledwith,* 26 Fla., 163, 23 Am. St. Rep., 558, 9 L. R. A., 69; *New Orleans v. Stafford,* 27 La. Ann., 417, 21 Am. St. Rep., 563; *Ex parte Canto,* 21 Tex. App., 61, 57 Am. Rep., 609, 17 S. W., 155; *Winnsboro v. Smart,* 11 Rich Law (S. C.), 551.

In *Bizzell v. Goldsboro,* 192 N. C., at p. 354, this Court held, quoting from *S. v. Bass,* 171 N. C., 781: "An ordinance to be valid *must be uniform in its application to all citizens and afford equal protection to all alike. It must not discriminate in favor of one person or class of persons over others. To be valid it must furnish a uniform rule of action.* (Italics ours.) *S. v. Tenant,* 110 N. C., 612. It must operate equally upon all persons, as well as for their equal benefit and protection, who come or live within the corporate limits. 1 Dillon Mun. Corp., sec. 380; *S. v. Pendergrass,* 106 N. C., 664; *S. v. Summerfield,* 107 N. C., 898."

The present ordinance comes within the principle above enunciated. The ordinance is a regulation applicable to all in prescribed limits.

In *Turner v. City of New Bern,* 187 N. C., p. 541, the principle was laid down: "Under the provisions of C. S., 2787, and under the provisions of its charter authorizing a city to pass needful ordinances for

its government not inconsistent with law to secure the health, quiet, safety—general welfare clause—within its limits, etc., it is within the valid discretionary exercise of the police powers of the municipality to pass an ordinance forbidding the erection of lumber yards within a long established, exclusively residential portion, and when this discretionary power has not been abused the courts will not interfere." In the *Turner case, supra,* there were prescribed limits applicable to all. *State ex rel. Nat. Oil Works of La. v. McShane, Mayor,* 159 La., 723, 106 Sou. Rep., 252; *Bizzell v. Goldsboro, supra,* at p. 357.

In 1910, according to the United States Census, the population of Winston-Salem was 22,700; in 1920 it was over double—48,395. As a matter of common knowledge, it is increasing perhaps nearly in the same ratio. The board of aldermen has left about five-sixths of the area of the city in which the plaintiffs are yet free to locate their businesses.

The petition against the ordinance was signed by perhaps one-seventh of the present population. This large number should, and no doubt did, have persuasive, but not necessarily binding, effect on the board of aldermen. The other conditions set forth by plaintiffs should, and no doubt did, have weight with the board of aldermen. It was a hardship on plaintiffs, but the law in this State, and the great weight of authorities in the nation, under the facts and circumstances of this case, are against the contention of plaintiffs. It is to be noted that the ordinance was passed on 18 June, 1926, and went into effect 1 December, 1926. The board of aldermen realizing the hardship on plaintiffs, gave them time to close out their businesses as dealers in fresh meat and sea-food, so that if they desired they could rent places in the city market and sell fresh meat and sea-food or rent places for their businesses outside the four-fifths of a mile area from the city market.

We have taken time to consider thoroughly a so far-reaching and important matter affecting the rights of plaintiffs.

From a careful review of the decisions of this State, the United States decisions and those of other states, and from the facts and circumstances of this case, the forum of plaintiffs was with the governing body of Winston-Salem—the power was given them by legislative enactment.

The case was argued here by able attorneys on both sides and the briefs covered every phase of the contentions.

Under the law, the judgment of the court below is

Affirmed.