CITY OF ELIZABETH CITY v. A. L. AYDLETT.

(Filed 10 November, 1931.)

1. **Municipal Corporations H b—Where zoning ordinance is reasonable and fair and does not unjustly discriminate it is valid.**

   A municipal corporation, in the interest of the public welfare, may establish areas within its limits and prescribe regulations as to the use of property within each area under its inherent police power, and this power is not static but expands to meet the changing conditions of progress, and although it may cause inconvenience or hardship in particular cases, the exercise of the zoning power is valid if the classifications are reasonable and fair and if the restrictions apply to all property within the district without unjust discrimination.

2. **Same—Zoning ordinance in this case held constitutional and valid.**

   Where a city in the exercise of its inherent police power and under legislative authority enacts a reasonable and valid zoning ordinance which divides the city into certain districts and regulates the use of property in each by a uniform rule, but provides that the operation of lawful businesses already established at the time of the passage of the ordinance might be continued although not in conformity with the zoning provisions, and provides further that gasoline filling stations should not be erected in districts of specified classifications: *Held*, the city may enjoin an owner of property in the prohibited district from completing the erection of a filling station therein, and the ordinance will not be declared void as being discriminatory in that it permitted the continued operation of filling stations erected in the district prior to the passage of the ordinance. The distinction between zoning ordinances and ordinances regulating the erection of gasoline filling stations only is pointed out by ADAMS, J.

**3. Same—Zoning ordinance will not be declared void as being confiscatory because resulting in financial loss in particular instance.**

> The test of the validity of a zoning ordinance of a municipal corporation is whether the classifications therein set out are fair and the scheme of development is sound, and the ordinance will not be declared invalid as being confiscatory because resulting in financial loss in a particular instance to an owner by restricting the use of his property in a district of a specified classification.

CLARKSON, J., dissents.

APPEAL by defendant from *Moore, Special Judge,* at May Term, 1931, of PASQUOTANK.

*A. Laurence Aydlett, M. B. Simpson and McMullan & McMullan for appellant.*
*J. B. Leigh, John H. Hall and Thompson & Wilson for appellee.*

ADAMS, J. The plaintiff is a municipal corporation. Private Laws 1923, ch. 15. The defendant, a resident thereof, is the owner of a lot situated on the northwest corner of Main and Road streets. In July, 1928, the board of aldermen passed an ordinance prohibiting the construction or maintenance of filling stations within specified municipal areas. The defendant's lot is within a district from which filling stations were excluded by the terms of this ordinance. Sometime before September, 1929, the defendant applied to the proper authorities of the city for permission to build a filling station on his lot and his application was denied. He then commenced the erection of the building and the city procured a warrant from a justice of the peace charging the defendant in a criminal proceeding with a breach of the ordinance. At the hearing the defendant was discharged; whereupon the city instituted a civil action to enjoin him from going on with the work. On appeal from a judgment rendered in the Superior Court this Court held upon the facts then appearing that the city was not entitled to injunctive relief. *Elizabeth City v. Aydlett,* 198 N. C., 585.

On 7 October, 1929, the city enacted a zoning ordinance pursuant to authority conferred by the General Assembly. Public Laws 1923, ch. 250. The ordinance was adopted in the interest of the public health, safety, morals, comfort, prosperity, and general welfare of the city and was designed to regulate and restrict the location of buildings to be used for trade, industry, residence, or other specified purposes; to divide the city into zones or districts; to classify buildings on the basis of the kind or character of the business to be done; and to prescribe a general method of administration. To this end the city was divided into

Residence A Districts, Residence B Districts, Business A Districts, Business B Districts, and Industrial Districts. With respect to each class the ordinance purports to be uniform and, not only to secure the public safety, but to facilitate provision for transportation, water, schools, and other public requirements.

The defendant's lot is in Business A District; and the zoning ordinance prohibits the erection of filling stations in this district at any time after the ordinance became effective.

After the adoption of the zoning ordinance the defendant undertook to complete the filling station without a permit from the city, and the plaintiff brought suit on 15 April, 1930, to restrain the defendant from proceeding in his enterprise. The restraining order issued at the commencement of the action was dissolved at the hearing, and upon appeal to the Supreme Court the judgment was reversed. *Elizabeth City v. Aydlett,* 200 N. C., 58. The cause again came on for hearing in the Superior Court of Pasquotank County at the May Term, 1931, and the judge, upon a waiver of trial by jury, found from the evidence that the zoning ordinance had been duly adopted by the governing body of the city, not arbitrarily or with a purpose to discriminate against the defendant or any other person, but in the proper exercise of the police power for the promotion of the objects set out in the title of the ordinance, and that the regulations are reasonable, valid, and lawful.

The judgment which the appeal brings up for review is assailed on the ground that the ordinance in question is not only confiscatory but invalid and unenforceable because it does not operate uniformly and subject to its provisions all persons within the defined locality. The latter position is based upon the finding that at the time the zoning ordinance was passed four other filling stations were in operation in the district in which the defendant's lot is situated "without molestation, actual or threatened, by the plaintiff or its agents," and that the station erected by the defendant compares favorably as to structure and operation with the other four.

The zoning ordinance provides that if at the time it was enacted any lot, building, or structure was being used in a manner or for a purpose which did not conform to the ordinance and was not prohibited by some other ordinance, the manner of use or purpose might be continued. Section 2(2). There is no finding that either of the four filling stations erected and operated before the zoning ordinance was adopted, and now operated, in territory covered by Business A District is prohibited by some other ordinance. The ordinance of 1928 was intended

to regulate the location and use of filling stations "and other business of like kind." It was not a zoning ordinance. It laid out certain districts described as "strictly residential or for church or school location" and contained the clause, "There is no filling station located therein." The ordinance of 1929 is a city zoning ordinance. Neither of its districts is coterminous with the boundaries of the former ordinance. It is a contention of the defendant that the law does not presume the existence of an independent ordinance which prohibits the maintenance of filling stations in any particular district and that the defendant's lot, therefore, is not subject to such prohibition. For the present purpose let us concede the defendant's position. The situation, then, is this: When Business A District was laid off and included in the city zoning ordinance, four filling stations were maintained within its boundaries. Does the ordinance which prohibits the subsequent construction and use of such stations within the district create an unlawful discrimination?

The word "zoning" signifies the division of a municipal corporation into separate areas and the application to each area of regulations which generally pertain to the use of buildings or to their structural or architectural design. Such municipal action finds its authority in the police power which may be exercised, not only in the interest of the public health, morals, and safety, but for the promotion of the general welfare. This power embraces the whole system of internal regulation and cannot be bargained away. *S. v. Vanhook,* 182 N. C., 831; *Pearsall v. R. R.,* 161 U. S., 646, 40 L. Ed., 838, 845. Its nature and extent have been defined in these words: "It may be said in a general way that the police power extends to all the great public needs. *Camfield v. United States,* 167 U. S., 518, 42 L. Ed., 260. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." *Noble State Bank v. Haskell,* 219 U. S., 104, 55 L. Ed., 112.

The police power is not static. It expands to meet conditions which necessarily change as business progresses and civilization advances. This is adverted to in *Euclid v. Ambler Realty Company,* 272 U. S., 365, 71 L. Ed., 303, in which a zoning ordinance was upheld against an attack on the question of its constitutionality: "Until recent years, urban life was comparatively simple; but with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity and validity

of which, as applied to existing conditions, are so apparent that they are uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained under the complex conditions of our day for reasons analogous to those which justify traffic regulations, which before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation."

The objection of discrimination under an ordinance similar to one under consideration was raised in *City of Aurora v. Burns,* 149 N. E., (Ill.), 784, and was declared untenable. In a district of the city there were twelve grocery stores; the defendants had another under construction; and the city brought suit to enjoin them from constructing or using the building in violation of the ordinance, which contained this provision: "Any lawful use existing at the time of the adoption of this ordinance of any building or premises may be continued, although such use does not conform to the provisions of this ordinance for the district in which such use is situated." We quote from the opinion which states the principle which is controlling in the present exception: "Zoning necessarily involves a consideration of the community as a whole and a comprehensive view of its needs. An arbitrary creation of districts, without regard to existing conditions or future growth and development, is not a proper exercise of the police power and is not sustainable. No general zoning plan, however, can be inaugurated without incurring complaints of hardship in particular instances. But the individual whose use of his property may be restricted is not the only person to be considered. The great majority, whose enjoyment of their property rights requires the imposition of restrictions upon the uses to which private property may be put, must also be taken into consideration. The exclusion of places of business from residential districts is not a declaration that such places are nuisances, or that they are to be suppressed as such, but it is a part of the general plan by which the city's territory is allotted to different uses in order to prevent, or at least to reduce, the congestion, disorder, and dangers which often inhere in unregulated municipal development.

"The building zone ordinance of the city of Aurora, pursuant to the requirement of the Enabling Act (Laws 1921, p. 180), permits lawful uses of buildings at the time of the passage of the ordinance, although not in conformity with its provisions, to continue thereafter. This

exception is made so that the ordinance shall not have a retroactive operation. It would be manifestly unjust to deprive the owner of property of the use to which it was lawfully devoted when the ordinance became effective. Fire limits are established within which the subsequent erection of wooden buildings is prohibited, yet existing wooden buildings are permitted to remain. *King v. Davenport,* 98 Ill., 305, 38 Am. Rep., 89; *County of Cook v. City of Chicago, supra.* Limitations upon the height of buildings, varying according to different districts, have been sustained. *Welch v. Swasey,* 193 Mass., 364, 79 N. E., 745, 23 L. R. A. (N. S.), 1160, 118 Am. St. Rep., 523, affirmed in 214 U. S., 91, 29 S. Ct., 567, 53 L. Ed., 923. The fact that an ordinance which prohibits the piling of lumber for storage or drying within 100 feet of a residence does not apply to one built after the lumber is piled does not render the ordinance invalid for unjust discrimination, since the difference between vacant property and property already occupied by a residence is, in view of the object of the ordinance, a reasonable classification. *City of Chicago v. Ripley,* 249 Ill., 466, 94 N. E., 931, 34 L. R. A. (N. S.), 1186, Ann. Cas., 1912A, 160.

"These, among many others, are police regulations which create discriminations, and yet are of undoubted validity. To exempt buildings already devoted to a particular use from a prohibition against such use of buildings thereafter erected in a specified area is not an unlawful discrimination. Such a classification has a sound basis and is reasonable. *Quong Wing v. Kirkendall,* 223 U. S., 59, 32 S. Ct., 192, 56 L. Ed., 350; *Welch v. Swasey, supra; Ayer v. Commissioners on Height of Buildings,* 242 Mass., 30, 136 N. E., 338; *Spector v. Building Inspector of Milton, supra; Commonwealth v. Alger,* 7 Cush. (Mass.), 53. Even if appellants' property could be used more profitably for business than for residential purposes, that fact would be inconsequential in the broad aspects of the case. Every exercise of the police power relating to the use of land is likely to affect adversely the property rights of some individual. Uncompensated obedience to proper police regulations has been often required. *Fischer v. St. Louis,* 194 U. S., 361, 24 S. Ct., 673, 48 L. Ed., 1018; *California Reduction Co. v. Sanitary Reduction Works,* 109 U. S., 306, 26 S. Ct., 100, 50 L. Ed., 204; *Reinman v. Little Rock,* 237 U. S., 171, 35 S. Ct., 511, 59 L. Ed., 900; *Hadacheck v. City of Los Angeles, supra."*

In particular cases inconvenience, even hardship may result; but as said in *Euclid v. Ambler Realty Company, supra,* "This is no more than happens in respect of many practice-forbidding laws which this Court has upheld, although drawn in general terms so as to include individual cases that may turn out to be innocuous in themselves."

The zoning ordinance adopted by the plaintiff was carefully drawn in conformity with the prevailing opinion and is not subject to the objection of unlawful discrimination. Metzenbaum's The Law of Zoning, 150, *et seq.; Welch v. Swasey,* 214 U. S., 91, 53 L. Ed., 923; *Hadacheck v. Sebastian,* 239 U. S., 394, 60 L. Ed., 348; *Zahn v. Board of Public Works,* 274 U. S., 325, 71 L. Ed., 1074; *Gorieb v. Fox,* 274 U. S., 603, 71 L. Ed., 1228; *Berry v. Houghton,* 204 N. W. (Minn.), 569; *Appeal of Ward,* 137 At. (Pa.), 630; *S. v. Hillman,* 147 At. (Conn.), 294; *Adams v. Kalamazoo Ice & Fuel Co.,* 222 N. W. (Mich.), 86; *Spector v. Building Inspector,* 145 N. E., 265; *Turner v. New Bern,* 187 N. C., 541.

We are also of opinion that the ordinance is not invalid because confiscatory. The fact that the erection of a filling station would increase the rent of the lot is not decisive. Financial loss is not the test; the question is whether the scheme is sound and the classification fair. If the question is fairly debatable the court will not substitute its judgment for that of the legislative body which creates the ordinance. *Zahn v. Board of Public Works, supra; S. v. Hillman, supra;* The Law of Zoning, 71.

In support of the principle that ordinances must be uniform the appellant cites *Bizzell v. Goldsboro,* 192 N. C., 348, *Clinton v. Oil Co.,* 193 N. C., 434, *MacRae v. Fayetteville,* 198 N. C., 51, and *Burden v. Ahoskie, ibid.,* 92. These cases deal exclusively with one enterprise— the construction and operation of gasoline filling stations. The ordinances were held inoperative because they created an unlawful discrimination between individuals engaged in the same business. They were altogether unrelated to municipal zoning, which, affecting the whole population, is intended to promote the health, safety, and welfare of the public by separating the commercial or industrial districts of the city from those which are set apart for other purposes, such as residences, schools, and churches. They are differentiated from zoning ordinances in *Elizabeth City v. Aydlett,* 200 N. C., 58. Unless the theory of nonconforming uses is practically applied it will be well-nigh impossible to zone the cities and towns of the State. It is an almost invariable rule to find a filling station in that part of a town or city which in the interest of the public welfare should, under the zoning system, be devoted to other uses. If the ordinance destroys an existing business it is retroactive; if it cannot be enforced because such business exists zoning as a practical matter is not possible.

We have referred to the police power as inherently necessary to the maintenance of government; but the General Assembly has expressly

empowered cities and towns to adopt zoning regulations and to restrain, . correct, or abate their violation, and this power the appellant does not question. *Harden v. Raleigh,* 192 N. C., 395; *Little v. Raleigh,* 195 N. C., 793. Judgment

Affirmed.

CLARKSON, J., dissents.