LEE KINNEY AND GEORGE LEVIN v. HARRY N. SUTTON, CHIEF BUILDING INSPECTOR OF THE CITY OF CHARLOTTE, AND THE CITY OF CHARLOTTE, A MUNICIPAL CORPORATION (ORIGINAL DEFENDANTS), AND R. H. BOULIGNY, R. E. BARRETT AND WIFE, OLIVET W. BARRETT; S. L. BAGBY, DR. CHARLES W. ROBINSON AND S. A. LESLIE (INTERVENING DEFENDANTS).

(Filed 11 May, 1949.)

1. Municipal Corporations § 37—

The operation of a restaurant or a public dining room for profit is a commercial activity.

2. Same—

A zoning ordinance proscribing commercial activities within a residential district unless carried on by members of the immediate family and

KINNEY v. SUTTON.

employing not more than two persons, excludes the operation of a public dining room employing nine persons in such district.

**3. Same—**

G.S. 160-172 authorizes municipalities to enact zoning ordinances prohibiting the use of property within a residential district for business or commercial purposes.

**4. Municipal Corporations § 36—**

A party attacking the constitutionality of an ordinance enacted by a municipality in the exercise of its delegated police power, has the burden of showing that the restrictions bear no substantial relation to the public health, safety, morals or general welfare of the community.

**5. Municipal Corporations § 37—**

A zoning ordinance covering all land within the municipality and separating commercial and industrial districts of the city from those set apart for residences, schools, parks, libraries, churches, etc., and which is uniform and operates alike on all territory within the respective zones, bears a reasonable relation to the health, safety, morals and general welfare of the entire community and is a valid and constitutional exercise of the delegated police power of the municipality.

**6. Same—**

Provision of a zoning ordinance which permits commercial and industrial activities within a residential district provided such activities are carried on by members of the immediate family and not more than two persons are employed therein, does not render the ordinance void as being discriminatory, since the commercial activities permitted thereunder in a residential district are so intrinsically different from unlimited commercial and industrial activities in general as to permit their separate classification.

**7. Same: Constitutional Law §§ 11, 20a—**

The fact that a lot would be more valuable if devoted to a nonconforming use does not deprive the owner of property without due process of law when the zoning regulations are uniform in their application to all within the respective districts, and the differentiation of the uses of property within the respective districts is in accordance with a comprehensive plan in the interest of the health, safety, morals or general welfare of the entire community.

APPEAL by Lee Kinney from *Patton, Special Judge,* at the February Term, 1949, of MECKLENBURG.

On 14 January, 1947, the City of Charlotte, acting through its legislative body, adopted a comprehensive zoning ordinance dividing the municipality into clearly designated business, industrial, and residential districts, and imposing restrictions on the alteration and erection of buildings and the use of premises in each of such districts.

KINNEY *v.* SUTTON.

The ordinance creates two classes of residential districts designated as residence 1 districts and residence 2 districts and provides that property in such areas may be used for the following purposes:

"SECTION III—RESIDENCE 1 DISTRICTS.

"(A) USES.

"In any residence 1 district, as indicated on the building zone map, no building or land shall be used and no building shall be hereafter erected or structurally altered, except for the following uses:

"1. Principal uses and buildings

"(a) (ONE-FAMILY DWELLINGS) A detached dwelling for only one family or for one housekeeping unit.

"(b) (TWO-FAMILY DWELLINGS) A two-family or duplex dwelling situated on a corner lot, having a single entrance or where the two entrances, if used, are on different streets.

"(c) (RELIGIOUS USES) Churches and other places of worship.

"(d) (EDUCATIONAL USES) Public and parochial schools, colleges, and universities, including dormitories, public libraries, public museums and public art galleries.

"(e) (SOCIAL USES) Municipal recreation buildings, playgrounds, and parks.

"(f) (GARDENING AND AGRICULTURE) Nurseries, truck gardens, and non-commercial greenhouses.

"2. Accessory Uses and Buildings

"Commercial activities, if carried on by members of the immediate family, and not more than two employed persons are permitted.

"Accessory uses customarily incident to any of the above permitted uses, but not including any activity conducted for gain. This shall not be construed to exclude the erection of or use of a building designed for living quarters for servants in the employ of the owner or occupant of a residence, which servants quarters shall be confined to the rear yard area.

"(a) (PROFESSIONAL OCCUPATIONS) The office of a resident professional person.

"(b) (SIGNS) Signs pertaining to the lease, sale or use of a lot or building may be placed thereon provided the total area of all such signs does not exceed eight (8) square feet, and provided further that on a lot occupied by a dwelling, the total area of signs placed on the lot or dwelling and pertaining to the use thereof, shall not exceed one (1) square foot. A sign or bulletin board not exceeding twelve (12) square feet in area may be erected upon the premises of a church, or other institution for the purpose of displaying the name and activities or services therein provided.

"SECTION IV—RESIDENCE 2 DISTRICTS.

"Within any residence 2 districts, as indicated on the building zone map, no building or land shall be used and no building shall be hereafter erected or structurally altered, except for the following uses:

"(A) USES

"Within any residence 2 districts, as indicated on the Building Zone Map, no building or land shall be used and no building shall be hereafter erected or structurally altered, except for the following uses:

"(I) RESIDENCE 1 DISTRICT USES

"Any use permitted by Section III of this ordinance in residence 1 districts.

"(II) OTHER USES

"(a) (DWELLINGS) A detached dwelling or an apartment house, where provision is made on the lot for parking at least one car for each house-keeping unit contained in the building.

"(b) (WELFARE USES) Hospitals, sanitariums, clinics, and physicians' offices, not primarily for contagious diseases or the care or treatment of drug or liquor addicts."

The ordinance expressly authorizes the continuance of nonconforming structures and uses existing at the time of its enactment.

Kinney owns a commodious dwelling located at 1122 East Morehead Street in the City of Charlotte, which he bought for $40,000.00 more than a year after the passage of the zoning ordinance. These premises are situated in a "residence 2 district." "The property to the south of the property fronting on Morehead Street, including 1122 East Morehead Street, in such residence 2 district, has been developed and is one of the most exclusive residential districts of the City, and the property to the north of the property facing on Morehead Street, in such residence 2 district, is devoted exclusively to residential use by people of moderate income." Only two nonconforming uses exist in this particular residence 2 district, these being a Woman's Club and an antique shop, which began operation "many years prior to January, 1947, the effective date of the zoning ordinance.

On 15 September, 1948, Kinney let the premises at 1122 East Morehead Street to Levin for a term of five years commencing on 15 October, 1948, for this rent: "$400.00 monthly in advance for the first year, and $525.00 monthly in advance for the remainder of said term." It was specifically stipulated that the property should "be used only for a restaurant and a residence for the lessee and immediate family" and that the lease should "terminate at option of lessee . . . if zoning restrictions prevent the use of the above described premises as a restaurant." The monthly rental value of the premises at 1122 East Morehead Street runs from $250.00 as a residence to $450.00 as a doctor's clinic.

After the lease became effective, Levin used the property at 1122 East Morehead Street as a residence, and as a public restaurant, where he served the evening meal daily to paying guests. Levin employed nine persons to assist him in the restaurant and had from fifty to one hundred and fifty customers a day. The operation of the restaurant "caused a further concentration of traffic in the vicinity of 1122 East Morehead Street, and there were in use at the restaurant three garbage cans and at least four waste cans."

After the restaurant had been in operation for five days, the City of Charlotte brought an independent action against Kinney and Levin, and obtained an order therein restraining them from using the premises as a public restaurant until they had exhausted administrative remedies under the zoning ordinance.

Thereafter, to wit, on 2 December, 1948, Kinney and Levin made application to Harry M. Sutton, Chief Building Inspector for the City of Charlotte, who is the administrative official charged with the enforcement of the zoning ordinance, for a certificate of occupancy under Section XI of the zoning ordinance entitling them "to use a part of the residence of George Levin, located at 1122 E. Morehead Street, for a high class public dining room." This request was refused by the Chief Building Inspector on the ground that "the use of the premises at 1122 East Morehead Street in the City of Charlotte partially for a restaurant or public dining-room was prohibited by the zoning ordinance of the City of Charlotte," and Kinney and Levin appealed from this decision to to the Board of Adjustment for the City of Charlotte. The Board of Adjustment heard the appeal in an open meeting, and took testimony from interested parties and their witnesses. Levin testified that he intended to resume operations of the previous size in the event the requested certificate of occupancy was granted. After hearing the evidence, the Board of Adjustment made finding of facts based thereon conforming to the matters hereinbefore set out, and affirmed in its entirety the decision of the Chief Building Inspector refusing to issue the certificate of occupancy "for the reason that granting of said permit for the operation of a commercial business in a residence 2 district would be a direct violation of the zoning ordinance."

Kinney and Levin thereupon procured a review of this decision of the Board of Adjustment in the Superior Court of Mecklenburg County by this "proceedings in the nature of *certiorari*" under G.S. 160-178. After permitting R. H. Bouligny, R. E. Barrett and wife, Olivet W. Barrett, S. L. Bagby, Dr. Charles W. Robinson, and S. A. Leslie, home owners residing in the residence 2 district in question, to intervene in the proceedings, and after considering the evidence presented by the record returned to it by the Board of Adjustment, the Superior Court concluded

that "the findings of fact of the Board of Adjustment are supported by the evidence," adjudged that no errors of law had been committed, and entered a judgment affirming the action of the Board of Adjustment. Kinney excepted to this judgment and appealed to this Court, assigning errors.

*James L. Delaney for petitioner, Lee Kinney, appellant.*

*John D. Shaw for respondents, Harry N. Sutton, Chief Building Inspector of the City of Charlotte, and the City of Charlotte, a municipal corporation, appellees.*

*McDougle, Ervin & Horack for interveners, R. H. Bouligny, R. E. Barrett and wife, Olivet W. Barrett, S. L. Bagby, Dr. Charles W. Robinson, and S. A. Leslie, appellees.*

ERVIN, J. The zoning ordinance under consideration was adopted pursuant to the authorizing act, which was originally enacted by the General Assembly of 1923 and which is now codified as Article 14 of Chapter 160 of the General Statutes.

The appellant asserts initially that he is entitled to the certificate of occupancy sought by him as a matter of right because the proposed use conforms to the use regulations prescribed by the ordinance for the district in which the premises at 1122 East Morehead Street are situated.

The zoning ordinance does not expressly stipulate that property in a residence 2 district may be put to use as a restaurant or a public dining-room. Hence, the operation of such a business cannot constitute a permitted use in such an area under the ordinance unless it can qualify as an authorized commercial activity under Section III (A-2), which permits "accessory uses and buildings" and "commercial activities, if carried on by members of the immediate family, and not more than two employed persons are permitted." The operation of a restaurant or a public dining-room for profit is undoubtedly a commercial activity for it is an undertaking relating to commerce or trade. 15 C.J.S., p. 576. But a restaurant or a public dining-room operated by an occupant of premises with the assistance of not less than nine employed persons does not find a place within the narrow category of commercial activities sanctioned by Section III (A-2) of the zoning ordinance. The number of employed persons involved, in and of itself, excludes such an enterprise from the commercial activities permitted by this section. Thus, it appears that the proposed use of the premises in question is prohibited as a nonconforming use by the provisions of the ordinance relating to residence 2 districts.

The appellant maintains secondarily, however, that the Legislature has not authorized a municipality to adopt a zoning ordinance prohibiting

the operation of a restaurant or a public dining-room in a residential area, and that the provisions of the ordinance invoked by the respondents and interveners on this phase of the controversy are void as being in excess of the power granted to the legislative body of the City of Charlotte by the authorizing statutes if such provisions are construed to bar the operation of a restaurant or a public dining-room in a residence 2 district. This contention overlooks the phraseology of G.S. 160-172 expressly providing that "for the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of cities and incorporated towns is hereby empowered to regulate and restrict the height, number of stories, and sizes of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes." The power vested in municipalities by the zoning statute "to regulate and restrict the . . . use of buildings, structures and land for trade, industry, residence or other purposes" includes authority to exclude a business, otherwise lawful, from a residential district. *Elizabeth City v. Aydlett,* 201 N.C. 602, 161 S.E. 78; *S. v. Roberson,* 198 N.C. 70, 150 S.E. 674. See, also, the authorities collected in the following annotations: 117 A.L.R. 1117; 86 A.L.R. 662.

The appellant contends finally that the provisions of the zoning ordinance prohibiting the use of the premises in question for a restaurant or a public dining-room bear no substantial relation to the health, safety, morals, or general welfare of the community; constitute arbitrary, unreasonable, and discriminatory restrictions upon the property rights of the appellant in such premises; and deprive the appellants of their property without due process of law in contravention of Article I, Section 17, of the State Constitution, and the Fourteenth Amendment to the Federal Constitution.

The enabling act authorizing cities and towns to enact zoning ordinances expressly recognizes the established principle of constitutional law that zoning measures must find their justification in some aspect of the police power of the State exerted in the interest of the public. G.S. 160-172. A number of our cases have explicitly or implicitly sustained zoning ordinances, which were adopted under the authority of our enabling act and which established restricted residential districts, as being within the police power. *Lee v. Board of Adjustment,* 226 N.C. 107, 37 S.E. 2d 128; *In re Appeal of Parker,* 214 N.C. 51, 197 S.E. 706; *Elizabeth City v. Aydlett,* 201 N.C. 602, 161 S.E. 78; *S. v. Roberson,* 198 N.C. 70, 150 S.E. 674; *Harden v. Raleigh,* 192 N.C. 395, 135 S.E. 151.

The zoning ordinance under consideration covers all land, buildings and structures in the City of Charlotte and is designed by the legislative

body of the municipality to promote the health, safety, morals and general welfare of the entire community by separating the commercial and industrial districts of the city from those which are set apart for other purposes, such as art galleries, churches, hospitals, libraries, museums, parks, playgrounds, residences, and schools. The presumption is that the zoning ordinance as a whole is a proper exercise of the police power, and the appellant has the burden of showing that the provisions of the ordinance forbidding the operation of restaurants or public dining-rooms in the restricted residential district in question bear no substantial relation to the health, safety, morals, or general welfare of the community. *In re Appeal of Parker, supra; American Wood Products Co. v. Minneapolis,* 35 F. 2d 657; *Forbes v. Hubbard,* 348 Ill. 166, 180 N.E. 767. The court below adjudged, in substance, that the appellant has failed to carry this burden, and that the provisions of the zoning ordinance challenged by him are valid. This adjudication finds full support in the record.

The objection that the provisions of the zoning ordinance prohibiting the use of the premises in question for a restaurant or public dining-room constitute arbitrary, unreasonable and discriminatory restrictions upon the property rights of the appellant in such premises is untenable. They are aptly phrased to secure their object, *i.e.,* to establish and preserve a restricted residential district free from substantial commercial and industrial activities. They are uniform and operate alike on all property within the territory affected. *Wake Forest v. Medlin,* 199 N.C. 83, 154 S.E. 29; *Broadfoot v. Fayetteville,* 121 N.C. 418, 28 S.E. 515, 39 L.R.A. 245, 61 Am. St. Rep. 668. The provision exempting non-conforming structures and uses existing at the enactment of the ordinance has a sound basis and is not unreasonable. *Elizabeth City v. Aydlett, supra.* The provision authorizing "accessory uses and buildings" and "commercial activities, if carried on by members of the immediate family, and not more than two employed persons are permitted" has a reasonable relation to the end in view, and is not an unlawful discrimination for such limited undertakings are so intrinsically and sufficiently different from unlimited commercial and industrial activities in general as reasonably to permit their separate classification. *Angelo v. Winston-Salem,* 193 N.C. 207, 136 S.E. 489, 52 A.L.R. 663, affirmed in 274 U.S. 725, 47 S. Ct. 763, 71 L. Ed. 1329; *S. v. Wheeler,* 141 N.C. 773, 53 S.E. 358, 5 L.R.A. (N.S.) 1139, 115 Am. St. Rep. 700; *Broadfoot v. Fayetteville, supra.* Furthermore, the fact that the property in question is more valuable for commercial purposes, such as a restaurant or a public dining-room, than for residential or other conforming uses is not sufficient of itself to invalidate the pertinent provisions of the ordinance as confiscatory. If the police power is properly exercised in the zoning of a municipality, a resultant pecuniary loss to a property owner is a misfortune

which he must suffer as a member of society. *Lee v. Board of Adjustment, supra; Elizabeth City v. Aydlett, supra.*

Since it appears that the zoning regulations prohibiting the use of property within the restricted residential district in question as a restaurant or public dining-room bears a substantial relation to the health, safety, morals or general welfare of the community and are not arbitrary, unreasonable, or discriminatory in character, it follows that they do not deprive the appellant of his property without due process of law in violation of Article I, Section 17, of the State Constitution or the Fourteenth Amendment to the Federal Constitution. *In re Appeal of Parker, supra; Village of Euclid, Ohio, v. Ambler Realty Co.,* 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A.L.R. 1016. It is noted, in closing, that the appellant acquired his right in the premises involved in this litigation with knowledge of the zoning ordinance.

For the reasons given, the judgment of the Superior Court is

Affirmed.